## DELLA v. DELLA.

Opinion delivered April 10, 1911.

ADVANCEMENT—PRESUMPTION—REBUTTAL.—Where a husband delivers money to his wife, the presumption arises that it was a gift; but this presumption may be rebutted by antecedent or contemporaneous declarations and circumstances tending to prove a trust in his behalf.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*L. C. Maloney* and *Carmichael, Brooks & Powers*, for appellant.

1. The evidence does not support the finding of the chancellor. No resulting trust was created, as the evidence must be clear and convincing. 48 Ark. 169; 45 *Id.* 484; 64 *Id.* 162; 71 *Id.* 378. The same rule is true of real and personal property.

2. Where a husband gives or delivers property to his wife, it becomes, so far as he is concerned, absolutely her property. 23 Ark. 508; 73 *Id.* 282; 31 Conn. 134; 50 Mo. 262; 1 App. D. C. 240; 32 N. J. Eq. 174; 76 Ark. 390; Kirby's Dig., § 2684.

The law does not imply a promise on the part of the wife to repay the amount nor raise a presumption that a trust was created. 86 Ark. 451; 21 Cyc. 1297.

*James A. Gray* and *Geo. A. McConnell*, for appellee.

1. The cases cited by appellant do not apply. Conceding that the rule as to realty and personalty is the same, 89 Ark. 578 is fatal to the contention that no trust resulted. 64 Ark. 155, 160; 80 Ark. 37; 78 *Id.* 346; sec. 2684, Kirby's Dig.; 60 Ark. 70, 73; 88 Ark. 56.

2. There is abundant evidence to support the findings, and they should be sustained. 89 Ark. 309; *Id.* 132; 77 *Id.* 305; 67 *Id.* 200; 73 *Id.* 489; 71 *Id.* 605; 68 *Id.* 134, 314; 72 *Id.* 67.

HART, J. On the fourth day of April, 1910, Christine Della instituted a suit for divorce against John Della, and as grounds therefor alleged that defendant had offered such indignities to her person as rendered her condition in life intolerable.

The defendant answered, denying all the allegations of the complaint, and for grounds of cross complaint alleged that plaintiff was guilty of adultery. He also alleged that he had deliv-

ered to her certain moneys to keep for him, and asked that she be declared to hold same in trust for him. The prayer of his cross complaint was for a divorce and for an adjustment of the property rights between plaintiff and defendant. The chancellor entered a. decree dissolving the bonds of matrimony between plaintiff and defendant; and adjudging that plaintiff pay to the defendant $1,850, and that when same is paid it shall be in full accord and satisfaction of all property rights between the parties. The plaintiff has duly prosecuted an appeal to this court.

It is conceded that the appeal does not seek to question the correctness of the decree for divorce; and only that part of the decree affecting the property rights of the parties is asked to be reversed.

Plaintiff and defendant were married in Pulaski County, Arkansas, in October, 1902, and lived together as husband and wife until about the time plaintiff instituted her suit for divorce. They had no children. Defendant was a gambler, and they also ran a boarding house during most of the period of their married life. Defendant claims that the boarding house was their joint venture, and plaintiff asserts that it was her separate business. Briefly stated, the testimony of the plaintiff shows that she had $850 or $1,000 when she married the defendant, and that the money and property she now has were accumulated by her own efforts in running a boarding house. She denies that defendant assisted her in running the boarding house or in accumulating the property. She says that he was quarrelsome, and that his conduct at the boarding house was detrimental to her business. She denies that defendant delivered to her any money, except small sums at infrequent intervals, and such sums were a gift to her. She also introduced witnesses, who testified that she conducted the boarding house, and that her husband did not assist her in running it.

Defendant admitted that he was a gambler, and said that he had something near two thousand dollars when he married plaintiff. He denied that she had any money at the time. He testifies that he made several hundred dollars per month from the percentage received by him in running a gaming house, and that he delivered all his earnings from week to week to his wife to keep for him. That same were to be kept by her in trust for

him to be used for their joint support in their old age. Defendant testified that he gave plaintiff as much as three hundred dollars on each of two separate occasions. His testimony also shows that he gave her to keep for him as much as twenty dollars per week for the period of time he ran the gambling house. He testifies that he was frugal in his habits, and that he assisted his wife in every way that he could in running the boarding house. He testified that his wife went to Denver, Col., during a part of the years 1906, 1907, 1908, and 1909, and that while she was gone he stayed at home and ran the boarding house. Other evidence was introduced which corroborated his testimony.

When a man purchases property and takes the title in his wife, the presumption is that it is a gift to her. *Ward* v. *Ward,* 36 Ark. 586; *Milner* v. *Freeman,* 40 Ark. 62.

"But this presumption is not conclusive. It may be rebutted by antecedent or contemporaneous declarations and circumstances which tend to prove the intention of the person who furnished the money to buy the estate that the grantee should hold as trustee and not beneficially for himself." *Milner* v. *Freeman, supra;* Perry on Trusts (4 ed.), § 147; 21 Cyc. 1297.

"In trusts of the second form, between family relatives, no evidence is necessary, in the first instance, to show the operation of the rule, since a presumption arises on the face of the transaction that a gift was intended, and that no trust results. This result, however is merely a presumption, and may be overcome. Extrinsic evidence, either written or parol, is admissible on behalf of the husband or parent paying the price to rebut the presumption of an advancement or gift, and to show that a trust results; and, conversely, such evidence may be used to fortify and support the presumption. In general, this extrinsic evidence, to defeat an advancement and establish a trust as against the party to whom the property is conveyed or transferred and those holding under him must consist of matters substantially contemporaneous with the purchase, conveyance or transfer, so as to be fairly connected with the transaction." 2 Pomeroy's Equity Jur., § 1041.

In this case the chancellor found that the defendant delivered money to his wife, and that the facts and circumstances accompanying the transfer show that it was not intended to be

a gift to her, but was intended to be a trust for him. Therefore, the appeal raises the question of whether the finding of the chancellor is against the preponderance of the evidence. The chancellor found that plaintiff had $3,700 in money, which should be divided equally between the parties to the action, and permitted her to retain as hers the hotel furniture, valued at about $5,000. In testing the credibility of the witnesses, the chancellor had the right to consider the whole testimony in the case—that upon the divorce as well as that affecting the property rights of the parties. Her acts and conduct since the marriage warranted the chancellor in not giving as much credence to her testimony as to that of the defendant. Moreover, her testimony that she had $800 or $1,000 at the time of her marriage is weakened by cross-examination.

We think it established by the evidence for the defendant that he delivered to plaintiff to be held in trust all his earnings, and that such earnings amounted to as much or more than the amount allowed by the chancellor. No useful purpose can be served by an extended discussion of the testimony. We deem it sufficient to say that our consideration of it convinces us that the finding of the chancellor was not against the weight of the evidence, and consequently that it should not be disturbed.

The decree will therefore be affirmed.