MARY R. WALTER, BY HER NEXT FRIEND, JAMES PURDY,
Respondent, v. LITTLETON W. WALTER, Appellant.

1. *Equity — Husband and wife — Trustee — Statute of uses.* — A deed of land
made on behalf of a husband and wife prior to their marriage, to a trustee for
their joint use and benefit, by the terms of which the property was to be
afterward conveyed by the trustee in such manner and to such persons as
they might appoint, did not create in the trustee a dry trust, which was imme-
diately executed under the statute of uses in the husband. That statute was
never intended to apply to such a case.

2. *Husband and wife — Suit by wife against husband may be brought, when.*
— A wife may maintain suit against her husband not only where she asks
relief in respect to her separate property, or where she seeks a separate provi-
sion out of her property; but in other cases she may sue him by her next
friend, where he improperly interferes with her rights so as to make it neces-
sary for her to defend herself against his unwarranted claims on her property;
as where property held by a trustee for the benefit of herself and her husband
jointly, was by the trustee conveyed to her husband absolutely, suit might be
brought to reinstate the trust on the ground of fraud, misrepresentation and
undue influence. And in reinstating the trust no deduction should be made,
on behalf of the husband, of the value of improvements made by him on the
property from the rents and profits arising therefrom.

Walter, by her next friend Purdy, v. Walter.

*Appeal from St. Louis Circuit Court.*

*Lackland, Martin & Lackland,* for appellant.

I. There was no trust created by the language of the deeds. What purported to be a trust was instantly executed by the statute of uses, leaving no estate in the trustee. . (Hill on Trustees, 232–3.)

(*a*) The fact that one of the *cestuis que trust* was or became a married woman does not defeat the operation of the statute, because the estate to her was not a separate estate. An estate to the joint use of husband and wife is not a separate estate. (Geyer v. Branch Bank, 21 Ala. 414; Bender v. Reynolds, 12 Ala. 446.)

(*b*) The fact that the estate to Mrs. Walter was given in contemplation of her marriage does not change the rule. (Ware v. Richardson, 3 Md. 50; Kuhn v. Newman, 26 Penn. 227.)

(*c*) There was nothing in the quantity of estate given to Mrs. Walter to defeat the statute, for she was either a joint tenant or a tenant by the entirety. (Gibson v. Zimmerman, 12 Mo. 385.)

(*d*) There was nothing in the duration of her estate to arrest its operation, for the unlimited power of disposal attached to the estates of the beneficiaries—invested them with fee simple estates. (Ruby v. Barnet, 12 Mo. 1; 2 Rop. Husband and Wife, 205, § 2; 2 Spence's Eq. Jur. 495.)

(*e*) The husband was entitled during his life to the use and enjoyment of the whole estate, no words of exclusion being used. (Hill on Trustees, 406–420; 2 Sto. Eq. Jur. 849, § 1382; Wh. & Tud. Lead. Cas. Eq. 539; McCaulay v. Phillips, 4 Ves. 18.)

II. The wife, having no separate estate, cannot sue her husband in respect to this property.

(*a*) She could not sue him in any proceeding at law. (Cord Legal and Eq. R. M. W., § 1019; 1 Dan. Ch. Pl. and Pr. 111; Longdyke v. Longdyke, 44 Barb. 367; Matson v. Matson, 4 Metc., Ky., 262.)

(*b*) Equity follows the law, and, outside of statutory enactments, does not authorize a wife to sue her husband except where

the controversy embraces rights vested in her as a *feme sole*, or where she asks for the establishment of a separate estate or separate provision out of her general estate. (1 Dan. Ch. Pr. 142–3, 2d Am. ed. 146 ; 2 Kent's Com. 164 ; Parsons v. Parsons, 9 N. H. 309 ; Earl v. Ferris, 19 Beav. 69 ; Wake v. Parker, 2 Keen, 59 ; Ritter v. Ritter, 31 Penn. 396.)

III. The charges of fraud and violence were not established as alleged ; neither were they in any way connected with the execution of the deeds sought to be set aside.

IV. The court erred in including the Mound City hotel in the decree re-establishing the trust. It did not originally belong to the trust estate. Its constituent elements were as follows : The result of the sale and exchange of trust property, $12,900. Rents from trust property, $17,685.68.

(*a*) The hotel cost $30,585.62. Of this cost only $12,900 proceeded from the trust estate. The balance, for $17,685.62, proceeded from the rents and profits, which belonged absolutely to the defendant. There was no equity in turning this major cost of the hotel into the trust fund, because it was definitely ascertained and fixed by the report of the commissioner.

(*b*) If the trust estate was wrongfully converted, then the proceeds of that estate in the hands of defendant remained constructively subject to the trust. In such case the preponderance of authority goes no further than to allow a lien in favor of the fund wrongfully converted. (Atherly on Marr. Set. 442–4 ; 25 Law Lib. 235 ; Lane v. Dighton, Ambler, 414 ; Balgney v. Hamilton, *id*. 414 ; Ryall v. Ryall, 1 Atk. 59 ; Kirk v. Webb, Prec. Ch. 84 ; *contra*, Bennett v. Mayhew, 1 Bro. Ch. 232.)

(*c*) Where the consideration of the investment by a trustee does not consist entirely of the trust estate, and the proportion of the trust estate entering into the investment is known, a court of equity either declares a lien against the investment for the amount of the trust fund it contains, or it decrees an undivided interest in favor of the trust estate to the extent of the trust fund so contained in the investment. (Price v. Blackmore, 6 Beav. 507; Oliver v. Pratt, 3 How., U. S., 403 ; Heth v. Richmond, 4 Gratt 482.)

*Glover & Shepley*, with whom was *Espy*, for respondent.

Opposing counsel contend that a wife may sue her husband (1) only in reference to property conveyed to her separate use; (2) in respect to her right to a settlement. If this is correct, then the laws create many other interests of property in a wife which it will not protect. This is a contradiction. No such anomaly is known. The law protects every right which it admits to exist. The wife may sue for other rights than those to separate property. (Sto. Eq. Pl. 63, note 2; Fry v. Fry, 7 Paige Ch. 461.) A wife may sue her husband to secure her distributable share of an estate against his creditors. (Eubank v. Montelien, 5 Ves. Jr. 737.) Where the wife claims an interest adverse to her husband, she may sue him. (Bradley v. Emerson, 7 Verm. 369; Smith v. Pinscomb, 10 Eng. Law & Eq. 50; Monday v. Wagham, 11 Eng. Law & Eq.; O'Brien v. Hilburt, 9 Texas, 297; Coleman v. Satterfield, 2 Head, 265; Lampert v. Lampert, 1 Ves. 21; Sydney v. Sydney, 3 P. Williams, 269; Kirke v. Clark, Prec. Ch. 275.) A wife may sue a husband in equity in all cases of wrongful acts done against her property. (Barber v. Barber, 21 How. 582; Bright on Husband and Wife, 471; 2 Sto. Eq. 167, § 847; *id*. 264, § 956; 1 Sto. Eq. 30, § 29.)

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding in the nature of a bill in equity for the purpose of reinstating a trust. It appears that the plaintiff and defendant, on the 18th of May, 1857, mutually agreed to convey, or procure to be conveyed, certain real estate belonging to them, or their friends respectively, to a trustee, to hold to the joint use of both. This agreement was made in contemplation of marriage. Afterward the plaintiff, in pursuance of this agreement, procured from her mother, Charlotte J. Purdy, a conveyance of certain real estate to one John Burkholder, for the use, benefit and behoof of said Mary R. (the plaintiff) and the said Littleton H. (the defendant), as joint tenants and not as tenants in common, to be used and enjoyed by the said plaintiff

and defendant, to be by such trustee conveyed in such manner, to such persons and for such considerations as the plaintiff and defendant might at any time direct and appoint, whether in fee simple absolutely, in mortgage, trust, by lease, or in any other manner ; and in case of the death of either said plaintiff or defendant without having directed or appointed the manner in which said estate should be conveyed or disposed of, then the trustee should hold the property in trust for the children of the body of the plaintiff by the defendant ; and in case there should be no children of the marriage living at the time of the death of either of them, then the trustee was to hold the property in trust for the survivor, and for the heirs and legal representatives of the survivor forever. At the same time, and by way of complying with his part of the agreement, the defendant conveyed certain real estate to Burkholder upon the same trusts as those expressed in the deed of Mrs. Purdy. Several years subsequent to the marriage the parties directed Burkholder, the trustee, to convey the property of the plaintiff to one Hatch, and they joined also in a deed conveying the same to Hatch in fee simple for the consideration of one dollar, and in a short time thereafter Hatch conveyed it to the defendant by absolute title for the nominal consideration of five dollars. By this means the defendant obtained the complete title discharged of all trusts. This suit was instituted by the plaintiff to have these conveyances set aside and declared void on the ground that they were procured by falsehood, fraud, misrepresentation and undue influence, and asking that the trust might be reinstated and a new trustee appointed. The Circuit Court, after referring the matter to a commissioner to take testimony, on the coming in of his report granted the prayer of the petitioner, appointed a new trustee, and re-established the trust upon certain property owned by the defendant which the court found was obtained from the proceeds and the rents and profits of the property of the plaintiff. From this decree the defendant appealed. In the first place it is argued here by the counsel for the appellant that the deeds did not raise a trust in Burkholder at all, as it was a dry trust and executed by the statute of uses, leaving no equitable or trust estate to invoke

the jurisdiction of a court of equity. But this is obviously a mistake. The statute of uses does not, and was never intended to, apply to such a case. To say that the use was immediately executed in the appellant, upon the making of the deed to the trustee, so as to vest him with the absolute title, would defeat the very object of the instrument, destroy the rights of survivorship, and is a proposition which cannot be maintained.

It is further objected that this suit cannot be maintained by the wife against the husband; that the only cases wherein the wife is permitted to proceed against the husband are: First, where she asks for relief in respect of her separate property; and secondly, where she asks for relief in respect of her separate provision out of her property. These two instances are the usual ones where she is allowed to proceed against her husband. But it does not follow that they are the only ones. She may have other rights which it is necessary for her own protection to vindicate; in which case the courts will not stand still and see her sacrificed and turned away remediless. Story, after stating the rule at law in respect to her disabilities, says: "But there are exceptions in equity which are wholly unknown at law. Thus, if a married woman (as sometimes happens) claims some rights in opposition to the rights claimed by her husband, and it becomes proper to vindicate her rights against those of her husband, at law she cannot maintain any suit against him. But in equity she may maintain a suit against him and all others who may be proper or necessary parties. In such a suit she cannot act under the advice or protection of her husband, and therefore she is allowed to seek the protection of some other person, who acts as her next friend, and the bill is accordingly exhibited in her name by such next friend." (Sto. Eq. Pl., § 61.) It is also said in the same work to be our constant experience that the husband may sue the wife or the wife the husband, in equity, notwithstanding neither of them can sue the other at law. This language was cited and approved in the case of Barber v. Barber, 21 How. 582, and the court declares that these "citations have been made to show the large jurisdiction which a court of equity has to secure the rights of married women when it may be neces-

sary to exert it with the assistance of the husband, or when he improperly interferes with them so as to make it necessary for the wife to defend herself against his unwarranted claims to her property. The result of that jurisdiction now is that the wife may in all such instances sue her husband by her next friend." The bill here was exhibited by the wife in the name of her next friend, and we think the suit was well brought. After a careful examination of the voluminous record, it appears to us that the decree is amply sustained by the testimony. The evidence leaves no room to doubt that the appellant obtained the fee simple title to the premises by resorting to the most unworthy practices and by perpetrating a deliberate fraud upon his wife. Instead of being her protector, his course was that of systematic oppression. He drove away her relatives and allowed no one to consult and advise with her, when he was seeking to deprive her of her property interests. The evidence shows incontestably that he induced her to believe that in executing the conveyance to Hatch she was merely changing trustees and not altering the title to the property. The arbitrary manner in which he treated her effectually extinguished all free agency on her part, and whatever she did was by force or intimidation. When he made known his will she was passive. The explanation which he attempts, that it was a voluntary proposition on her part to deed the property to him absolutely, that he might be like other married men, and unconditionally own all the property, and that he objected, and that it was some ten days or two weeks before he finally acceded to the request, is as ridiculous as it is false. The conditions on which the parties lived did not call for such an overflow of affection and disinterested regard on the part of the wife, and the appellant's avaricious disposition and insatiate greed do not warrant the conclusion that it would take that length of time for him to acquiesce in such a proposition.

Hatch was the ready and willing instrument in the hands of the appellant in carrying out the disgraceful transaction. That the property was deeded to him in fee, and that immediately thereafter he conveyed by the same title the property to the appellant, and that the consideration in both deeds was only nominal, raises the

conclusive presumption that the whole matter was prearranged. In exculpation of the discreditable part taken by Hatch he says that he supposed that in making the deed the title to the property would not be changed, but that Mrs. Walter would still have her rights in the same. But this in nowise helps him, and only goes to show that the only office that he performed was to do whatever Walter required of him ; and the whole taken together stamps the full agency and design of Walter in the entire transaction.

But the further point is urged against the decree that it applies the trust to the property of the appellant, and that this property was improved and enhanced in value by some of his own means. The hotel property which is made subject to the trust was purchased with the trust property of the wife, and some of the improvements were paid for out of the rents and profits of the trust estate. It is insisted that these rents and profits belonged absolutely to the husband, and that, therefore, there should be a deduction to that amount. But suppose the money had been laid out and expended upon the original trust estate of the wife before there was any alteration in the deeds, would it not have been the same trust property, and subject to the terms and conditions and limitations of the original trust ? Such being, as we think, the case, the unlawful conversion did not change the character of the property, and the *cestui que trust* has the right to enforce her claim against the property acquired by the proceeds and profits of what was originally hers. It may be that she is getting a more valuable claim than she previously had ; if so, the case furnishes a happy illustration of the doctrine of retributive justice. Upon a full review of the whole case we think the judgment should be affirmed. The other judges concur.